UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**WESTFIELD INSURANCE COMPANY,**

    **Plaintiff,**     CASE NUMBER: 12-15373
               HONORABLE VICTORIA A. ROBERTS

**v.**

**ENTERPRISE 522, LLC,**

    **Defendant,**

and

**KEARNS INSURANCE AGENCY, INC.,**
a Michigan corporation,

    **Intervenor.**
_____/

## ORDER DECLARING JUDGMENT FOR FIRE COVERAGE IN FAVOR OF ENTERPRISE AND DISMISSING FRAUD AND INDEMNITY CLAIMS

**(Doc. #s 46, 47, and 49)**

**I. INTRODUCTION**

  For years, Westfield Insurance Company ("Westfield") continuously renewed commercial building fire insurance coverage to Enterprise 522, LLC ("Enterprise"), even when it became clear that Kearns Insurance Agency Inc. ("Kearns"), acting as agent for Westfield and Enterprise, mistakenly stated on Enterprise's initial application for coverage in 2003, that Enterprise had an automatic sprinkler system.

  In fact, as late as 2011, an inspector reported to Westfield that no automatic sprinkler system was in place. Nonetheless, Westfield renewed the policy requiring that

the automatic sprinkler system be maintained, reducing the premium because of an automatic sprinkler system on the premises. When a fire in 2012 totally destroyed Enterprise's commercial building, Westfield denied coverage because the automatic sprinkler system was not there.

Westfield seeks a declaratory judgment that fire coverage is precluded. Enterprise filed a counterclaim:

1. Count I: Declaration that the damage is covered;

2. Count II: Indemnity, requesting payment for all amounts paid to fix the building, including 12% penalty interest under MCL 500.2006, And alternatively;

3. Count III: Reformation of the contract to state the parties original intent to include fire coverage;

4. Count IV: Recovery for silent fraud; and

5. Count V: Damages for misrepresentation.

Kearns intervened and filed a counterclaim alleging that the insurance coverage is illusory. Kearns says Westfield's coverage violates MCL 500.2006, unfair trade practice. Kearns also requests that the Court exercise equity and reform the insurance contract to provide coverage.

All parties move for summary judgment on their respective claims.

The Court declares that coverage was in place at the time of the loss and Westfield must pay Enterprise. The Court **GRANTS** Enterprise's and Kearns' motion for declaratory judgment and **DENIES** declaratory judgment in favor of Westfield. The

Court need not decide the alternative arguments, but notes that reformation is proper.

The Court **DENIES** and **DISMISSES** Enterprise's claim for indemnity and penalty interest; this argument is not briefed.

The Court **GRANTS** Westfield's motion and **DISMISSES** Enterprise's counterclaim of silent fraud and misrepresentation; Enterprise's and Kearns' motions for judgment on these claims are **DENIED.**

**II.     BACKGROUND**

Kearns employs licensed insurance agents to sell insurance.  Kearns has agreements ("Agency Agreement")  with insurance companies allowing it to quote and bind coverage; one of those companies is Westfield.  The Agency Agreement with Westfield allows Kearns "to solicit applications, bind coverage, countersign, deliver and endorse insurance policies."  The Agency Agreement also has an indemnification clause which says "The Agent shall indemnify and hold the Company harmless from and against liability for damage arising out of any Agent error or omission in the preparation or handling of any insurance policy or billing procedure to which this Agreement applies . . . ."

Kearns says that when quoting insurance, its agents enter information into a system which generates a dollar amount for the risk.  If the potential insured accepts the coverage and quote, an application with property information is completed.  If the insured is not available to sign the application, Kearns' agents submit the application to insurance underwriters without the insured's signature.  Kearns' agents then give a copy of the application to the insured for review; insurance is bound.  The selected insurance

company's underwriters review the risk and issue a policy.

Gary Fletcher, an owner of Enterprise, was delegated the duty to find coverage for the property; he used Kearns to secure commercial insurance for the property for roughly twenty years. In 2003, the insurance company which Fletcher selected left Kearns' network, requiring him to switch insurance companies or leave Kearns.

Fletcher's testimony is that he did not want to leave Kearns; he instructed Kearns to handle the insurance issue, i.e., secure new coverage for the building with a company in network. Kearns recommended Westfield.

To get a Westfield quote, Kearns submitted information about Enterprise's property. Fletcher accepted the terms of the quote and Kearns prepared the application. Mistakenly, Kearns selected a box saying that the property had an automatic sprinkler system. A premium reduction was given for the sprinkler system.

Kearns testimony is that after completing the application, it mailed a copy to Fletcher. Fletcher testified that he did not receive a copy of the application and did not even know that an application was required. Fletcher verified with others at Enterprise; all say no application was received.

Because the existence of a sprinkler system could not be verified through Westfield's preliminary search in 2003, an inspection was ordered by Westfield's underwriter to confirm the presence of an automatic sprinkler system. The 2003 inspection report did not confirm the existence of a sprinkler system, rather it said: "FIRE PROTECTION: . . . are the following satisfactory? . . . Sprinkler System: N/A."

Westfield issued the policy before this inspection was performed and continued to re-issue it after review of the 2003 inspection report. The policy had an exclusion: "as

a condition of insurance [Enterprise] is required to maintain the protective devices or services listed in the schedule above." P-1 is the code for automatic sprinklers and it was not listed in the schedule. The schedule said "Information required to complete this Schedule, if not shown above, will be shown in the Declarations." P-1 was referenced in the Declarations, but not listed as a limitation on coverage; instead, it was listed under "Optional Coverages."

The full policy was provided to Kearns. Enterprise disputes that it received a copy of the policy; it says it only received a declaration page listing coverage, which does not provide details about exclusions. Enterprise did not request a complete policy before filing its claim. Kearns' testimony is that Westfield sent the policy to Kearns which, in turn, mailed it to Enterprise.

Westfield continued to issue this same policy until 2011. In 2011, Westfield requested a second inspection of Enterprise's building. At the hearing before this Court, Westfield said that this inspection was requested because Westfield thought that Enterprise's premium was too low; it wanted to verify certain information. When the inspector arrived, Enterprise informed the inspector that the building did not have an automatic sprinkler system. The 2011 inspection report is clear that there was no sprinkler system, and this report was given to Westfield's underwriting department. It was placed in Enterprise's file.

Westfield says that its underwriters did not review the 2011 inspection report. According to Westfield's policies, the report was logged by a clerical employee and filed away. Enterprise's account activity from Westfield's system shows that the inspection report was received on April 7, 2011.

Even so, Westfield issued the same policy with fire coverage and no protective safeguard listed in the schedule for exclusions.

Westfield does not dispute that it would have issued a policy for fire coverage to Enterprise even had it known no automatic sprinkler system was in place. Westfield's underwriters testimony is that a policy would have issued without the exclusion and premium reduction: "[i]f a building does not have a sprinkler system, the protective safeguard endorsement should not be on it." Westfield's underwriter Buyers testified that if "there was no sprinkler, then we would have likely issued the policy with no sprinkler credit and no protective safeguard endorsements."

On October 29, 2013, Hurricane Sandy caused a power line to break, which landed on Enterprise's building, destroying it by fire. The fire department arrived within minutes, but could not stop the fire from spreading because of the high winds. An insurance claim was filed. When Enterprise asked Westfield's adjuster about the exclusion, it's adjuster did not know what the exclusion meant. Enterprise asked Kearns; Kearns advised that the exclusion required that the building comply with code; an automatic sprinkler system is not required by law.

Westfield filed this declaratory action and denied Enterprise's claim a day later. A hearing was held on June 24, 2014.

### III. STANDARD OF REVIEW

The Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). "[T]he filing of cross-motions for summary judgment does not

6

necessarily mean that an award of summary judgment is appropriate." *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 309 (6th Cir.2005). "The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *Lee v. City of Columbus*, 636 F.3d 245, 249 (6th Cir.2011).

When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits. *Federal Ins. Co. v. Hartford Steam Boiler Insp. and Ins. Co.*, 415 F.3d 487, 493 (6th Cir. 2005). The facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A fact is material for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

IV. **LAW AND DISCUSSION**

The parties dispute whether Enterprise is entitled to coverage if the policy says Enterprise must maintain an automatic sprinkler system. From the inception of the policy, in 2003, to the date of the fire, Enterprise's building never had an automatic sprinkler system. However, a 2003 application mistakenly indicated it did have one. Westfield's 2011 inspection made clear none was installed. Nonetheless, Westfield issued the policy for coverage, with the protective safeguard endorsement and premium reduction.

1. **Declaratory Judgment (Count I)**

Enterprise and Kearns argue that the exclusion is not applicable because it is ambiguous. In the alternative, Enterprise and Kearns say that Westfield waived the exclusion and is estopped from arguing that it bars coverage because it issued -- and reissued -- the policy with knowledge that Enterprise's building did not have an automatic sprinkler system. They say, if the exclusion is applicable, coverage is illusory.

The Court need not address Enterprise and Kearns' arguments of estoppel and illusory coverage; the exclusion is ambiguous.

"An insurance policy is much the same as any other contract." *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 566, 489 N.W.2d 431 (1992). "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. To this rule all others are subordinate." *McIntosh v. Groomes*, 227 Mich. 215, 218, 198 N.W. 954 (1924). "If the language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning; but if it is ambiguous, testimony may be taken to explain the ambiguity." *New Amsterdam Cas. Co. v. Sokolowski*, 374 Mich. 340, 342, 132 N.W.2d 66 (1965); see also *Frankenmuth Mut. Ins. Co. v. Masters*, 460 Mich. 105, 111, 595 N.W.2d 832 (1999).

An ambiguity can be either: patent or latent. *Shay v. Aldrich*, 487 Mich 648, 641; 790 NW2d 629 (2010). A patent ambiguity is one "that clearly appears on the face of a document, arising from the language itself." Black's Law Dictionary (7th ed); see also *Hall v. Equitable Life Assurance Society*, 295 Mich. 404, 409, 295 N.W. 204 (1940). A latent ambiguity "does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed."

Black's Law Dictionary (7th ed.).  "A latent ambiguity exists when the language in a contract appears to be clear and intelligible and suggests a single meaning, but other facts create the necessity for interpretation or a choice among two or more possible meanings." *Aldrich*, 487 Mich. at 668.

Westfield refutes Enterprise's and Kearns' allegation of ambiguity, arguing that a full reading of the endorsement, coupled with the declarations details that Enterprise was required to maintain an automatic sprinkler system.

The applicability of the exclusion is patently ambiguous on its face; even a reading of the policy, i.e., endorsement and its declarations fails to adequately show that the exclusion is a condition of fire coverage.

The exclusion is only defined on one page of a 150 page policy, page BP 04 30 01 06.  Westfield conceded at oral argument that the exclusion is only *defined* under the protective safeguards page of the policy; yet it is not listed in the schedule which makes the exclusion *applicable* to Enterprise.  Nor is it listed as an exclusion on the declarations page.

The declarations say: "*Optional Coverages*."  P-1 is listed under the Optional Coverages subheading, and is not even defined on the declarations page, nor is there text directing Enterprise to the page which defines the symbol.

At the hearing, Westfield conceded: "nothing in the declarations directs the insured to the policy [that defines P-1]."

Nonetheless, Westfield argues that an adequate connection can be made between the endorsement and declarations because on page two of the declarations, under "Forms and Endorsements," a series of codes list 01/06* BP0430 01/06*.

Westfield says this is the page number where the exclusion is defined.

This encrypted series of codes is not enough to link the two documents; the text is not even the same. The page with the exclusion is labeled as BP 04 30 01 06, on the bottom right hand side of the policy. The Forms and Endorsements section of the declarations lists many series of numbers less than two spaces apart; it is hard to tell where one page number starts and ends. The declarations cannot be traced to the schedule.

P-1 is tucked among twenty different coverages, all of which provide additional insurance. At the hearing, Westfield could not name one of the coverages under the column that limited coverage. This, too, supports ambiguity.

Neither of the parties really understood the meaning of P-1 listed under the Optional Coverages column:

1. Westfield's own insurance adjuster did not know the meaning of P-1 listed on the declarations page:

   Q. Do you recall stating that you didn't know what exactly the P1 protective safeguards endorsement meant during the October 31st, 2012 meeting?
   A. Yes, I recall that.
   Q. And you indicated that you have to go get some additional documents, research it and get back with us.
   A. That's correct.

2. Westfield's insurance agent who sold Westfield's insurance regularly, did not understand the meaning of P-1. Kearns testified that it instructed Enterprise that P-1 required Enterprise to "have what the code required, which was smoke detectors, illuminated exit signs and fire extinguishers."

3. Enterprise testified that it thought P-1 provided additional coverage as stated by its heading. Enterprise said that it asked both Westfield and Kearns to explain

the meaning; neither of them informed it that coverage required Enterprise to have and/or maintain a sprinkler system.

A review of the policy shows that when coverage was conditioned on an exclusion; Westfield explicitly said so. Throughout the policy, Westfield has headings saying "exclusion" and "limitation." Westfield could have taken the same precaution when conditioning fire coverage.

Enterprise says that, ambiguities in insurance contracts are automatically construed against the drafter. This is only true in Michigan if the parties' intent cannot be determined; otherwise, an ambiguity is submitted to a jury. *Holland v. Trinity Health Care Corp.*, 287 Mich.App.524, 527; 791 N.W.2d 724 (2010).

Because the parties intent is undisputed, there is no jury question. Enterprise purchased fire coverage; Westfield intended to issue fire coverage. Westfield's own testimony is that P-1 would have been excluded from the contract had the underwriters corrected the file; fire coverage without the condition would have been issued. It is clear that the exclusion was not intended to be part of the agreement.

Summary judgment is granted in favor of Enterprise and Kearns; Westfield's motion is denied.

### 2. Reformation (Count III)

Assuming *arguendo*, that the applicability of the exclusion was not ambiguous, the exclusion would not bar coverage. Reformation of the contract to comport to the parties meaning is a proper, equitable remedy. *Bleam v. Sterling Ins. Co.*, 360 Mich. 208, 213-214; 103 N.W.2d 466 (1960)("Reformation is particularly appropriate where the record indicates the forms are confusing or ambiguous. If, as the proofs indicate,

11

defendant's agent misunderstood and misinterpreted the language of defendant's own printed materials, it is not surprising that plaintiff … misunderstood them.").

"Courts may reform a contract where there has been a mutual mistake made by the parties or where there is a mistake by one party and fraud or inequitable conduct by the other." *Stein, Hinkle, Dawe & Associates, Inc. v. Continental Casualty Co.*, 110 Mich. App. 410, 418-419; 313 N.W.2d 299 (1981). Mutual mistake is "an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction," *Ford Motor Co v. City of Woodhaven*, 475 Mich. 425, 442; 716 NW2d 247 (2006), and established by the "certainty of the error." *Holda v. Glick*, 312 Mich. 394, 404; 20 N.W.2d 248 (1945)("Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a mere preponderance of evidence, but only upon a certainty of the error.").

While Westfield argues that it did not make a mistake by issuing a policy which conditions fire coverage on the maintenance of an automatic sprinkler system that Enterprise did not have, Westfield is wrong; a mistake was made.

Westfield's underwriter testified that had read he read the 2011 inspection report, he would have issued the policy without the exclusion: "[i]f a building does not have a sprinkler system, the protective safeguard endorsement should not be on it" and if "there was no sprinkler, then we would have likely issued the policy with no sprinkler credit and no protective safeguard endorsements." Enterprise says that had it caught the exclusion, it would have asked for a correction. This, alone, establishes a mistake.

Alternatively, Westfield argues that it did not make a mistake because it did not know Enterprise's building was not sprinklerized. Enterprise argues that under Michigan

law, agent knowledge is imputed to the principal. The Court finds that knowledge is imputed to Westfield by its inspector.

In *Upjohn Co v New Hampshire Ins Co*, 438 Mich. 197, 208-209, n.8; 476 N.W.2d 392 (1991), the Michigan Supreme Court adopting the holding of *Copeman Laboratories Co. v. General Motors Corp.*, 36 F. Supp. 755, 762 (D. Mich. 1941):

> When a person representing a corporation is doing a thing which is in connection with and pertinent to that part of the corporation business which he is employed, *or authorized or selected to do, then that which is learned or done by that person pursuant thereto is in the knowledge of the corporation.* The knowledge possessed by a corporation about a particular thing is the sum total of all the knowledge which its officers and agents, who are authorized and charged with the doing of the particular thing acquire, while acting under and within the scope of their authority.

*Upjohn Co v. New Hampshire Ins Co*, 438 Mich. 197, 208-209, n.8; 476 N.W.2d 392 (1991)("We adopt this reasoning and apply it in this case. This Court concludes that the Upjohn Company had sufficient information available to it, through its various employees and through its records kept at the UMC facility, to allow us to find, as a matter of law, that the release of chemical by-product from tank FA-129 was expected by the Upjohn Company.").

Westfield disputes that *Upjohn* is controlling by arguing that unlike *Upjohn*, none of its *employees* had actual knowledge that the building was not sprinklered because its underwriter did not read the 2011 inspection report.

It is irrelevant that Westfield did not read the report. Westfield hired an inspector to examine the building for a sprinkler. Enterprise told the inspector that the building did not have a sprinkler system. The inspector examined the building and did not find a sprinkler system. The inspector completed a report saying that the building did not have a sprinkler system. The 2011 report was provided to Westfield's underwriter and placed

13

in Enterprise's file.

And, as Enterprise and Kearns argue, the doctrine of unclean hands does not bar equity. Unclean hands is an equitable doctrine which says that "[t]hose who seek equity must first do equity," *Lemke v. H&R Block Mortgage Corp.*, No. 11-14979, 2012 (E.D. Mich. March 6, 2012), this is "invoked by the Court in its discretion to protect the integrity of the Court." *Stachnik v. Winkel*, 394 Mich. 375, 386 (Mich. 1975).

While failing to read a policy can preclude equitable reformation, it does not in this instance; reading Westfield's encrypted policy would have been an exercise in futility.

Because a mutual mistake existed, the contract is reformed and the exclusion is redacted.

### 3.  Indemnity (Count II)

Enterprise seeks indemnification with penalty interest from Westfield; it says Westfield was required to pay the claim when made.

Westfield argues that indemnity is an equitable remedy foreclosed to Enterprise because it has unclean hands.

Enterprise does not have unclean hands; but, the Court denies Enterprise's poorly briefed request for penalty interest. Enterprise's only argument is a reference to MCL 500.2006, which is not enough to develop the claim for relief. *See United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004)("We have cautioned that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived, and that it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put the flesh on the bones.")

(citations and internal quotations omitted).

### 4. Silent Fraud (Count IV)

Enterprise says that Westfield is liable for silent fraud because it failed to disclose that: (1) fire coverage was conditioned on Enterprise maintaining -- and thus having -- a sprinkler system, and (2) Enterprise made a mistake on its application. Westfield says that it did not have a duty to disclose either.

Under Michigan law, "[a] fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood, and courts have not hesitated to sustain recoveries where the truth has been suppressed with the intent to defraud." *Williams v Benson*, 3 Mich. App. 9, 18-19; 141 N.W.2d 650 (1966)(quoting *Tompkins v Hollister*, 60 Mich. 470, 483; 27 N.W. 651 (1886)). To recover, Enterprise needs to show that Westfield had a duty to disclose a material fact and failed to do so. *Lorenzo v. Noel*, 522 N.W.2d 724, 725 (Mich. Ct. App. 1994).

Even if a duty to disclose existed, these allegations fail because no evidence shows that Westfield hid information from Enterprise. *See Clement-Rowe v. Mich. Health Care Corp.*, 212 Mich. App. 503, 538 N.W.2d 20, 23 (Mich. Ct. App. 1995) (discussing "silent fraud" and noting that in Michigan, a claim of fraud predicated on a failure to disclose fails if the defendant fulfilled its duty to disclose); see also *Bye v. Nationwide Mut. Ins. Co.,* 733 F. Supp. 2d 805, 822 ( E.D. Mich. 2010) (no reasonable reliance, thus no fraud because there was no evidence that defendant hid information).

There is no silent fraud; Count IV is dismissed.

### 5. Fraud (Count V)

Enterprise argues -- in one paragraph -- that Westfield made fraudulent

15

misrepresentations by issuing it a policy that conditions fire coverage.

This argument is both poorly briefed and alleged, and it is waived and dismissed. Even it were properly briefed, it would still be dismissed. In *Belle Isle Grill Corp v Detroit*, 256 Mich. App. 463 (2003), the Michigan Appeals Court set forth the elements a plaintiff must demonstrate to sustain a claim for fraud based on a misrepresentation:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

*Belle Isle Grill Corp*, 256 Mich. App. 463, 477; 666 N.W.2d 271 (2003).

Enterprise failed to show a single representation or assertion made by Westfield that constitutes fraud.

Count IV is dismissed.

## IV. CONCLUSION

The Court declares that coverage was in place at the time of the loss and Westfield must pay Enterprise. The Court **GRANTS** Enterprise's and Kearns' motion for declaratory judgment. Declaratory judgment in favor of Westfield is **DENIED.** The Court need not decide the alternative arguments, but notes that reformation is proper.

The Court **DENIES** and **DISMISSES** Enterprise's claim for indemnity and penalty interest; these arguments are not briefed.

The Court **GRANTS** Westfield's motion and **DISMISSES** Enterprise's counterclaim of silent fraud and misrepresentation; Enterprise's and Kearns' motions for judgment on these claims are **DENIED.**

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: July 29, 2014

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 29, 2014.
>
> S/Carol A. Pinegar
> Deputy Clerk